UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 23-cv-01545-RA

UNITED STATES OF AMERICA,

    Plaintiff,
v.

ALL THAT LOT OR PARCEL OF LAND
LOCATED AT 19 DUCK POND LANE,
SOUTHHAMPTON, NEW YORK 11968,
TOGETHER WITH ITS BUILDINGS,
APPURTENANCES, IMPROVEMENTS,
FIXTURES, ATTACHMENTS, AND
EASEMENTS, et al.,

    Defendants-*in-rem*.
_____/

**ASSOCIATIONS' REPLY TO OPPOSITION OF
MEDALLION INC. AND VOXI MANAGEMENT CORP.
TO MOTIONS TO COMPEL SALES OF FLORIDA PROPERTIES**

COMES NOW, Claimant, PALAZZO DEL SOL/DELLA LUNA AT FISHER ISLAND CONDOMINIUM ASSOCIATION, INC. ("Palazzo Del Sol"), and Claimant, PALAZZO DEL MARE AT FISHER ISLAND CONDOMINIUM NO. ONE ASSOCIATION, INC., ("Palazzo Del Mare")(collectively "Associations"), and hereby file this Reply to Claimants', MEDALLION, INC., ("Medallion"), and VOXI MANAGEMENT CORP. ("Voxi")(collectively Medallion"), Opposition to the Associations Motions to Compel Sales of Florida Properties (ECF No. 51)("Opposition") and in support thereof states:

On October 26, 2023, Palazzo Del Sol filed its Motion for Interlocutory Sale and Incorporated Memorandum of Law (ECF No. 49), moving for the interlocutory sale of Defendant-*in-rem* Unit 7002 PH-2 Palazzo Del Sol/Della Luna at Fisher Island upon the issuance of an OFAC license. On November 1, 2023, Palazzo Del Mare filed its Motion for Interlocutory

Sale and Incorporated Memorandum of Law (ECF No. 50), moving for the interlocutory sale of Defendants-*in-rem* Units 7182 and 7183 of Palazzo Del Mare upon the issuance of an OFAC License. For ease of reference, the Motions shall be referred to collectively as the "Associations' Motions."

In its Opposition, Medallion argues that the Court should deny the Associations' Motions until such time OFAC has resolved the pending license applications relating to the Units. Medallion further argues that the Associations' Motions should be denied because seemingly the Court or the Parties could face criminal prosecution for proceeding with a sale; because an entity that has not entered a claim in this action (Smile Holding Ltd.) "intends to pay promptly the outstanding bills on the Florida properties and the other defendants in rem, which will moot Palazzo's motions", and because the motions are not yet ripe for decision. For the reasons set forth below, each of these arguments are without merit, and therefore the Associations' Motions should be granted.

I. THE COURT CAN ENTER A SALES ORDER FOR THE UNITS

Medallion argues that an order authoring the sale of the Units would be futile as any participants in a sale might face criminal prosecution and refers to the indictment of Mr. Robert Wise, Esq. to underscore its point. However, Mr. Wise was indicted on the grounds that despite knowing of Vekselberg's SDN designation, Mr. Wise made payments on his behalf "without disclosure or approval from OFAC." *See United States v. Robert Wise,* Case 1:23-cr-00073-MKV, Superseding Information, attached hereto as Exhibit A, at ¶2. In contrast to Mr. Wise, the Associations specifically requested an Order from this Court providing for a sale once an OFAC license has been issued, so this argument is without merit as the Associations will have approval from OFAC to sell the Units when the licenses are granted.

Furthermore, Medallion's argument is nothing more than a conclusory statement that is unsupported by law or the applicable regulations. In *Crystallex International Corporation v. Bolivarian Republic of Venezuela,* 17-151-LPS, 2022 WL 611586 (D. Del. Mar. 2, 2022) the court considered whether it should adopt a Sale Procedures Order proposed by a Special Master for the sale of shares of a Venezuelan-owned oil company, which shares were blocked property by OFAC under the Venezuelan sanction regime and therefore required a license to be sold. The court concluded "that nothing prohibits it from taking such actions, even if no party has obtained a specific license from OFAC. The Court has not been pointed to any legal authority or any other aspect of the sanctions regime that bars the Court from proceeding with a sale process, up to and including the selection of a winning bidder, provided that legal title to the PDVH Shares is not transferred until after the winning bidder obtains a specific license." *Crystallex,* 2022 WL 611586 at *8. The same holds true in the instant action. Medallion points to no legal authority or any other aspect of the sanction regime that bars this Court from proceeding with a sale process without a specific license from OFAC.

While the *Crystallex* court conducted a detailed analysis of the provisions of the Venezuelan sanction regime, which is governed by 31 CFR §591, *et seq.,* many of those provisions contain substantially similar, if not identical, language to the Ukraine/Russia-Related Sanction Regulations pertinent in this action, which are governed by 31 CFR §589, *et seq.*, and therefore such considerations are persuasive in this action.  For instance, 31 C.F.R. §591.310, entitled "Transfer" of the Venezuelan sanctions is identical to 31 C.F.R. §589.337, entitled "Transfer" of the Ukraine/Russian-Related Sanctions. Both regulations provide that the term "transfer" means "any actual or purported act or transaction…the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right,

remedy, power, privilege or interest with respect to any property." 31 C.F.R. §589.337; *see also* 31 C.F.R. §591.310.

The *Crystallex* court determined that "entering and implementing the Proposed Order does not involve any 'transfer' meeting" the regulatory definition of 31 C.F.R. §591.310. *Id.* at *10. "Rather, it is the last step of the sale process – i.e., the actual transfer of ownership of the PDVH Shares – that would 'create, surrender, release, convey, transfer or alter' any right or interest in the PDVH Shares, so it is this last step that cannot be taken without the issuance of a specific license from OFAC." *Id.* The court found that "none of the specific acts the Proposed Order contemplated being taken, short of executing the sale – 'provide for' or 'have the purpose or effect of 'altering any interest in blocked property." *Id.* The court further determined that since, pursuant to 31 C.F.R. §591.202(e), "the subsequent granting of a license can validate even an otherwise unlawful transaction…[w]hat matters, therefore, is **whether** a license is ultimately obtained, not **when**." *Id.* at 11. Once again, the Ukraine/Russia-Related sanctions provide an identical provision; 31 C.F.R. §589.210(c)("a license or other authorization issued by OFAC before, during, or after a transfer shall validate such transfer or make it enforceable to the same extent that it would be valid or enforceable but for the provisions of this part…").

Additionally, the Venezuela Parties in *Crystallex* made much the same argument as Medallion here as it relates to potential criminal liability of those who participated in the sale process. The Venezuela Parties argued that "[m]arching forward in the absence of an OFAC license will not just risk potential civil and criminal liability for those private parties [who participate in the sale process], it could also prompt further litigation over the validity of the actions and transactions executed, here and perhaps in other courts." *Id.* at *17. The *Crystallex* court found this argument without merit and found that "liability requires a 'willful' violation of

Page **4** of **8**

the sanctions and, given the Court's view of the sanctions, the participation of private parties in a judicially ordered process cannot constitute a willful violation of the law." *Id.* Moreover, as the Associations requested that this Court enter an order setting the Units for sale once an OFAC license is issued to the Associations, with such sale to be conducted accordance with the procedures set forth in Supp. R. G(7)(b)(iii), it is axiomatic that the sale would not occur until such time that the Associations received the appropriate licenses, and therefore no party would face civil or criminal prosecution.

## II.   THE ASSOCIATIONS' MOTIONS ARE RIPE FOR DETERMINATION

Medallion argues that "the Court should deny the motions without prejudice to renewal after OFAC has resolved pending license applications relating to the properties"(*See* ECF No. 51 at p. 1) and that "[o]nly in the extremely unlikely event that OFAC denies Smile Holding's application and grants Palazzo's will the motions be ripe for decision" *See* ECF No. 51 at p. 3. Medallion again cites no legal authority supporting this position.

In *OI European Group B.V. v. Bolivarian Republic of Venezuela,* MC 19-290-LPS, 2022 WL 611563 (D. Del Mar. 2, 2022) the court considered various motions by judgment creditors of the Republic of Venezuela who sought a writ of attachment for shares of a state-owned oil company, which shares were blocked property by OFAC under the Venezuelan sanction regime and therefore required a license from OFAC to be transferred. Venezuela argued that the motions "are not ripe because those motions are contingent on possible future events, such as OFAC's issuance of a specific license." *OI European Group B.V.,* 2022 WL 611563 at *4. The court found that the motions were ripe for adjudication primarily because "[t]he Court is focused on the application of the OFAC sanctions to a largely undisputed set of facts, leaving the Court to decide purely legal issues…Further factual development would not aid the Court's decision on the OFAC issues…The judgment creditors are asking this Court to provide relief *now* in the form

of orders that would leave them better prepared to perfect interests in the PDVH Shares at the appropriate time." *Id.*

Similarly, in the instant action, the facts pertinent to the Associations' Motions are not disputed; Medallion and Voxi owe money to the Associations and tax authority of Miami-Dade County. Pursuant to the relevant Declarations of Condominium and Florida Statutes, and but for this forfeiture action and blocking notice, the Associations are legally entitled to place a lien on the Units and cause the Units to be sold at a foreclosure sale to satisfy the debts of Medallion and Voxi. The Associations are petitioning this Court to provide relief now that would leave them better prepared to resolve their claims against the Units when an OFAC license is issued. Accordingly, the Associations' Motions are ripe for determination.

### III.     MEDALLION'S PROMISES TO PAY ARE INSUFFICIENT TO MOOT THE ASSOCIATIONS' MOTIONS

Medallion further argues that "If OFAC grants a license to Smile Holding, it intends to pay promptly the outstanding bills on the Florida properties and the other defendants in rem, which will moot Palazzo's motions."  ECF No. 51 at p. 3. While the Associations hope that Smile Holding will immediately pay its outstanding debts to the Associations and tax authority, this unsworn statement is insufficient to render the Associations' Motions moot and should not be considered by this Court.

"The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Diaz v. Session,* 17-CIV-4148, 2019 WL 952307 at *2 (S.D.N.Y. Feb. 27, 2019). Just because Smile Holdings (who is not even a claimant in this action) "intends to pay promptly" the debts of Medallion and Voxi, does not mean the Associations are not entitled to the relief sought in its Motions. The Associations do not object to a provision contained in the requested Order cancelling any sale of the Units upon full and complete payment of Medallion's

and Voxi's outstanding debts to the Associations prior to a sale, but until such payment is made, the Associations are entitled to the relief sought.

## IV. CONCLUSION

Therefore, for the reasons stated above, this Court is able to enter an Order setting a sale of the Units contingent upon the Associations obtaining an OFAC license without fear of criminal or civil prosecution. Medallion provided no legal support for any of its arguments and provided nothing more than unsworn, conclusory and unsupported statements that the Associations motions are not ripe or may eventually be mooted by a third-party's intent to pay at some unspecified time in the future. It simply is not fair to make the members of the Associations continue to pay the debts of Medallion and Voxi. Accordingly, the Associations' Motions for Interlocutory Sale should be granted.

Dated: December 15, 2023

Respectfully submitted,

SACHS SAX CAPLAN
*Attorneys for Palazzo Del Sol/Della Luna at Fisher Island Condominium Association and Palazzo Del Mare at Fisher Island Condominium No. One Association, Inc.*
6111 Broken Sound Parkway NW, Suite 200
Boca Raton, Florida 33487
Telephone: 561-994-4499
Facsimile: 561-994-4985
Email: SLevine@ssclawfirm.com
         SRahilly@ssclawfirm.com

By: */s/ Samuel J. Levine*
        SAMUEL J. LEVINE, ESQ.
        Florida Bar No. 1025534
        *Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 15, 2023, a true and correct copy of the foregoing document was electronically filed through CM/ECF. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

By: /s/ Samuel J. Levine
SAMUEL J. LEVINE, ESQ.
Florida Bar No. 1025534
*Admitted Pro Hac Vice*

# EXHIBIT A

Case 1:23-cr-00073-MKV Document 4 Filed 02/15/23 Page 1 of 4
Case 1:23-cr-00073-MKV Document 52 Filed 04/25/23 Page 10 of 13

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- x

UNITED STATES OF AMERICA       :     **SUPERSEDING INFORMATION**

- v. -                         :     S1 23 Cr. 73 (MKV)

ROBERT WISE,                   :

           Defendant.       :

------------------------------- x

The United States Attorney charges:

## COUNT ONE
### (Conspiracy to Commit International Money Laundering)

1. From at least in or about April 2018 through at least in or about 2022, ROBERT WISE, the defendant, and others engaged in a scheme to commit international money laundering in violation of 18 U.S.C. § 1956(a)(2)(A), to promote the carrying on of violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.*, by using international wire transfers to conduct U.S. dollar transactions for the benefit of Viktor Vekselberg, a Russian oligarch who was sanctioned by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC"), without disclosure to or approval from OFAC.

2. Before and after on or about April 6, 2018, when OFAC sanctioned Vekselberg by designating him as a Specially Designated National ("SDN"), Vekselberg beneficially owned and controlled through shell companies various real properties in the United States (the "Properties") currently worth approximately $75 million. Vladimir Voronchenko, a/k/a "Vladimir Vorontchenko," a long-time friend and associate of Vekselberg, resided in certain of the Properties. Before OFAC designated Vekselberg as an SDN, ROBERT WISE, the defendant, and others caused U.S. dollar payments to be made to maintain the Properties using WISE's

interest on lawyer's trust account ("IOLTA Account"), and WISE and others continued doing so after OFAC designated Vekselberg as an SDN even though WISE knew about that designation. In fact, after on or about April 6, 2018, WISE and others caused approximately $3.8 million in U.S. dollar payments, which were made from funds received by international wire transfers, to be made to maintain the Properties and attempted to sell two of the Properties, without disclosure to or approval from OFAC.

### Statutory Allegations

3. From at least in or about April 2018 through at least in or about 2022, in the Southern District of New York and elsewhere, ROBERT WISE, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to commit international money laundering in violation of 18 U.S.C. § 1956(a)(2)(A).

4. It was a part and an object of the conspiracy that ROBERT WISE, the defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, to wit, violations of the IEEPA, in violation of 50 U.S.C. § 1705, Executive Orders 13660, 13661, and 13662, and 31 C.F.R. § 589.201.

### Overt Acts

5. In furtherance of the conspiracy and to effect its illegal object, the following overt acts, among others, occurred in the Southern District of New York and elsewhere:

2

a. On or about June 27, 2019, the IOLTA Account in the Southern District of New York received an international wire transfer in the amount of approximately $150,000 from Smile Holding Ltd., which money ROBERT WISE, the defendant, used to make U.S. dollar payments to maintain the Properties.

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATION

6. As a result of committing the offense alleged in Count One of this Superseding Information, ROBERT WISE, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count One, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Asset Provision

7. If any of the property described above as being subject to forfeiture, as a result of any act or omission of ROBERT WISE, the defendant,

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

3

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 982; Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

*Damian Williams*
DAMIAN WILLIAMS
UNITED STATES ATTORNEY

4